# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| SAMUEL ISAAC MARQUEZ,<br>　　*Petitioner*,<br>vs.<br>E.K. MCDANIELS, *et al.*,<br>　　*Respondents*. | 3:08-cv-00647-LRH-VPC<br><br>ORDER |

This represented habeas matter under 28 U.S.C. § 2254 comes before the Court on respondents' motion (#39) to dismiss. Respondents seek the dismissal of Grounds 2, 3(c) and 4 as procedurally defaulted.

## *Background*

Petitioner Samuel Marquez challenges his 2003 Nevada state judgment of conviction, pursuant to a jury verdict and as subsequently amended, for first-degree murder with the use of a deadly weapon, robbery with the use of a deadly weapon, and burglary while in possession of a deadly weapon. Prior to seeking federal habeas relief, Marquez challenged the conviction on direct appeal and in a timely state post-conviction petition. After he filed a counseled amended petition, the Court held that Grounds 2, 3(c) and 4 were not exhausted. The Court granted petitioner a stay, and he pursued a second state petition to exhaust the grounds.

As further backdrop, petitioner alleges a substantive claim in Ground 2 that he was denied rights to a fair trial and due process in violation of the Fifth, Sixth, and Fourteenth Amendments when the State allegedly failed to provide Marquez adequate notice that the State was seeking to convict him of

first-degree murder also based upon felony murder, resulting in an inability to prepare a proper defense. He alleges in Ground 3(c) that he was denied effective assistance of trial and appellate counsel when counsel failed to raise the issue of the State's alleged lack of such adequate notice at trial and on appeal. He alleges in Ground 4 that he is entitled to relief due to the cumulative effect of the errors raised on appeal to the state supreme court and in the federal petition.

In an April 11, 2012, order of affirmance, the Supreme Court of Nevada held that the second state petition was procedurally barred as untimely, successive, and an abuse of writ. The court rejected petitioner's reliance upon alleged ineffective assistance of post-conviction counsel as good cause excusing a procedural default because the appointment of counsel on the prior petition was discretionary. The court rejected petitioner's reliance otherwise upon alleged ineffective assistance of trial and appellate counsel as good cause excusing a procedural default of a substantive claim because an ineffective-assistance claim that itself was procedurally barred could not constitute cause.

Petitioner thereafter timely sought rehearing based in substantial part upon the March 20, 2012, decision of the United States Supreme Court in *Martinez v. Ryan*, 132 S.Ct. 1309 (2012). The Court held in *Martinez* that the absence of or ineffective assistance of counsel in a state court initial review collateral proceeding could provide cause potentially overcoming the procedural default of claims of ineffective assistance of trial counsel on federal habeas review where the initial review collateral proceeding constituted the first meaningful opportunity to pursue such claims.

After directing and considering a response from the State, the Supreme Court of Nevada denied rehearing in a summary denial.

The Court thereafter reopened the federal matter, and respondents moved to dismiss the now putatively exhausted grounds on the basis of procedural default.

### *Governing Law*

Under the procedural default doctrine, federal review of a habeas claim may be barred if the state courts rejected the claim on an independent and adequate state law ground due to a procedural default by the petitioner. Review of a defaulted claim will be barred even if the state court also rejected the claim on the merits in the same decision. Federal habeas review will be barred on claims rejected on an independent and adequate state law ground unless the petitioner can demonstrate either: (a) cause

for the procedural default and actual prejudice from the alleged violation of federal law; or (b) that a fundamental miscarriage of justice will result in the absence of review.  *See, e.g.,Bennett v. Mueller*, 322 F.3d 573, 580 (9th Cir. 2003).

To demonstrate cause, the petitioner must establish that some external and objective factor impeded efforts to comply with the state's procedural rule.  *E.g., Murray v. Carrier*, 477 U.S. 478, 488 (1986)*; Hivala v. Wood*, 195 F.3d 1098, 1105 (9th Cir. 1999).  To demonstrate prejudice, he must show that the alleged error resulted in actual harm.  *E.g., Vickers v. Stewart*, 144 F.3d 613, 617 (9th Cir. 1998). Both cause and prejudice must be established.  *Murray*, 477 U.S. at 494.[1]

### *Discussion*

Petitioner contends in principal part that: (a) the state supreme court's "refusal to find good cause was not an adequate . . . state bar" because of an alleged "unprecedented departure from its longstanding practice of modeling state 'good cause' standards on federal 'good cause' standards" in not following *Martinez*; and (b) he in any event can establish cause and prejudice in federal court based upon *Martinez*.

### *Adequate State Law Ground*

The Court is not persuaded that the state supreme court's declining to follow *Martinez* renders the state procedural bars not adequate state procedural grounds.[2]

In order for a state procedural rule to be "adequate" to support the state court judgment, the state rule must be clear, consistently applied, and well established at the time of the petitioner's purported default.  *See, e.g., Collier v. Bayer*, 408 F.3d 1279, 1284 (9th Cir. 2005).  Nothing in that requirement

---

[1] No argument is made that petitioner is actually factually innocent and that a fundamental miscarriage of justice thus would result in the absence of federal review.  There is no possible viable argument in that regard on the underlying facts, which are discussed further *infra*.

[2] In the subheading to the argument, petitioner suggests that the state court's refusal to follow federal law "was not an adequate and independent state bar."  Petitioner's argument, however, is addressed only to the requirement of adequacy.   The phrase "independent and adequate" does not refer to a redundancy such as in the phrase "null and void."   Instead, the state law ground must be both "independent" and, as a distinct requirement, "adequate."  The "independence" requirement refers to whether the application of the state procedural bar rested primarily on federal law or was interwoven with federal law.  *E.g., Bennett*, 322 F.3d at 581.  Nothing in petitioner's argument would tend to establish that, by declining to follow the federal case authority in *Martinez* concerning the operation of the federal procedural default doctrine, the state supreme court's application of the state procedural bars was interwoven with federal law.

-3-

of "adequacy" requires that a state court follow federal procedural default doctrine case authority in applying its state procedural bars. Most assuredly, as this Court and the Ninth Circuit have noted in prior cases, there was, at least prior to *Martinez*, substantial similarity between Nevada state law and federal law regarding the manner for overcoming a procedural bar. For a state procedural bar to be "adequate," however, it is only necessary for the state courts to be clear and consistent in their application of *state* law. There is no requirement that the state law be – or remain – consistent with *federal* law. The change in the law in this context was at the federal level – in *Martinez* creating an exception to the holding in *Coleman v. Thompson*, 501 U.S. 722 (1991). The Supreme Court of Nevada – in contrast – has clearly and consistently applied the well-established Nevada *state* law rule that alleged ineffective assistance of post-conviction counsel cannot provide good cause to overcome a state procedural bar. *See, e.g., Brown v. McDaniel*, ___ P.3d ___, 2014 WL 3882680 (Nev. Aug. 7, 2014)(reaffirming the court's long adherence to the established state law rule).

Petitioner accordingly has failed to establish that the state law bars were not adequate.[3]

***Cause and Prejudice Under Martinez***

The Ninth Circuit recently outlined the standards to be applied when a petitioner seeks to establish cause and prejudice under *Martinez* to overcome the procedural default of a claim of ineffective assistance of trial or appellate[4] counsel. The court stated:

> To demonstrate cause and prejudice sufficient to excuse the procedural default, [a petitioner must] make two showings. First, to

---

[3]Petitioner presents no other argument challenging the consistency of the state supreme court's application of, *inter alia*, the state procedural bar based on untimeliness in N.R.S. 34.726(1). The Court thus has no occasion to consider the shifting burden framework applicable to such a challenge under *Bennett*. The Ninth Circuit consistently has rejected the argument that the Supreme Court of Nevada inconsistently applied the time bar in N.R.S. 34.726(1) generally for time periods up through 1996. *See, e.g., Collier*, 408 F.3d at 1285. When the Ninth Circuit has held that the state procedural rule has been consistently applied, the petitioner then has the burden of citing state court cases demonstrating a subsequent inconsistent application of the state rule. *E.g., King v. Lamarque*, 464 F.3d 963, 966-67 (9th Cir. 2006). In the absence of any authority showing that the state supreme court applied N.R.S. 34.726(1) inconsistently, the Court must presume that the state procedural rule is adequate. *See, e.g., High v. Ignacio*, 408 F.3d 585, 590 (9th Cir. 2005). If one of the state law grounds relied upon by the state supreme court is adequate, the Court need not inquire further as to the other state law grounds.

[4]Respondents maintained in their motion papers that the *Martinez* rule does not extend to claims of ineffective assistance of appellate counsel. The Ninth Circuit since has held that it does. *See Ha Van Nguyen v. Curry*, 736 F.3d 1287, 1289 (9th Cir. 2013).

> establish "cause," he must establish that his counsel in the state postconviction proceeding was ineffective under the standards of *Strickland [v. Washington*, 466 U.S. 668 (1984). *Strickland*, in turn, requires him to establish that both (a) post-conviction counsel's performance was deficient, and (b) there was a reasonable probability that, absent the deficient performance, the result of the post-conviction proceedings would have been different. *See Strickland*, 466 U.S. at 687, 694 . . . . Second, to establish "prejudice," he must establish that his "underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez*, 132 S.Ct. at 1318.
>
> There is, to be sure, overlap between the two requirements. Within the "cause" prong there is an element of "prejudice" that must be established: to show ineffective assistance of post-conviction relief counsel, a petitioner must establish a reasonable probability that the result of the postconviction proceeding would have been different. The reasonable probability that the result of the post-conviction proceedings would have been different, absent deficient performance by post-conviction counsel, is necessarily connected to the strength of the argument that trial counsel's assistance was ineffective. The prejudice at issue is prejudice at the post-conviction relief level, but if the claim of ineffective assistance of trial counsel is implausible, then there could not be a reasonable probability that the result of post-conviction proceedings would have been different.
>
> [T]he . . . conclusion—[that] "prejudice" for purposes of the "cause and prejudice" analysis requires only a showing that the trial-level ineffective assistance of counsel claim was "substantial" — does not diminish the requirement . . . that petitioner [must] satisfy the "prejudice" prong under *Strickland* in establishing ineffective assistance by post-conviction counsel [to demonstrate "cause"]. To demonstrate that there was a reasonable probability that, absent the deficient performance, the result of the post-conviction proceedings would have been different, it will generally be necessary to look through to what happened at the trial stage.

*Clabourne v. Ryan*, 745 F.3d 362, 377-78 (9th Cir. 2014).

This Court thus looks first through to the trial record to consider whether petitioner can establish ineffective assistance of post-conviction counsel due to the failure to raise the claim of ineffective assistance of trial counsel alleged in federal Ground 3(c). Petitioner alleges therein that trial counsel was ineffective for failing to object to the State's alleged failure to provide Marquez adequate notice that the State was seeking to convict him of first-degree murder also based upon felony murder, resulting in an inability to prepare a proper defense.

The Court assumes *arguendo* that its review is *de novo* and that its review thus is not restricted only to Supreme Court cases or to cases decided at the time of the state supreme court's order.

The information charged Marquez in three counts with murder with the use of a deadly weapon, robbery with the use of a deadly weapon, and burglary while in possession of a deadly weapon. The murder, robbery, and burglary charges were based upon a unitary set of events. The murder charge alleged that Marquez killed Richard Adamicki by "striking [him] numerous times on the head with a deadly weapon, to wit: a baseball bat and/or other blunt-type object." The robbery charge alleged that Marquez took personal property from Adamicki through force and without his consent "using a deadly weapon, to wit: a baseball bat and/or other blunt-type object, during the commission of said crime." The burglary charge alleged that Marquez entered the bar with intent to commit larceny "while in possession of a deadly weapon, to wit: a baseball bat and/or other blunt-type object."[5]

On the murder charge in particular, the information alleged in Count I, *inter alia*, that Marquez "did then and there, without authority of law, and with the intent to kill, malice aforethought and express malice, wilfully and feloniously kill" Adamicki.[6]

The crime itself was straightforward. The evidence also was straightforward. The crime and the leadup to the crime were recorded on surveillance video.

Marquez arrived at the Lake Mead Tavern in Las Vegas shortly after midnight. He had two beers and apparently played video poker for a little over an hour total. By the time of the murder and robbery, Marquez and the bartender, Richard Adamicki, were the only two persons left in the bar at the late hour.[7]

Marquez went outside the bar and retrieved a baseball bat. He was not seen in the video previously either with the bat or walking in a manner in which he appeared to be hiding something that

---

[5] #20, Ex. 5.

[6] *Id.*

[7] #20, Ex. 8, at 89, 125-30, 145-46, 154-55 & 159-60; *id.*, Ex. 9, at 26-29 & 33-38 (confession).

The Court makes no credibility findings or other factual findings regarding the truth or falsity of evidence or statements of fact in the state court. The Court summarizes same solely as background to the issues presented, and it does not summarize all such material. No statement of fact made in describing statements, testimony or other evidence constitutes a finding by this Court. This order simply is not repeatedly prefacing every statement in the summary with an expression to the effect of "the video reflected that or a witness testified that . . . ." Moreover, any absence of mention of specific evidence in this recital does not signify that the Court has overlooked the evidence in considering petitioner's claims.

size. He was seen in the video at the ATM after he came back inside retrieving the bat from down his pants where he had been hiding it after he walked back in.[8]

After returning inside, Marquez went to the ATM and tried unsuccessfully three times to obtain cash with a credit card. When the police later retrieved the transaction recorder for the ATM, the last three transactions on the transaction slip were from Marquez' attempt to obtain cash. It was at this time, while he was by the ATM, that Marquez pulled the bat out from down his pants and hid the bat between the ATM and the jukebox.[9]

Also during the time that Marquez was at the ATM, Adamicki came over to try and help him with obtaining cash through the ATM. Adamicki then went back over to sit at the end of the bar, apparently reading a newspaper.[10]

After Adamicki sat back down, Marquez retrieved the bat, walked over behind Adamicki, and swung the baseball bat into the side of his head. Marquez' blow with the bat immediately knocked Adamicki out of his seat and onto the floor. Marquez' blow apparently knocked Adamicki immediately functionally unconscious, as he did not move to defend himself after being knocked from his seat by Marquez' blind side attack to his head with the bat.[11]

With Adamicki laying apparently unconscious on the floor, Marquez raised the bat again and struck Adamicki again on the head with the bat.[12]

Marquez then immediately went over to the bar and cleared out most of the cash in the cash register along with rolled change that was near the register.[13]

When Marquez stepped back over Adamicki on his way back from the register, he reached down and appeared to take Adamicki's wallet. #20, Ex. 8, at 92 & 102.

---

[8] #20, Ex. 8, at 86-91 & 129-32; *id.*, Ex. 9, at 11, 38, 42-43 & 46-47 (confession).

[9] #20, Ex. 8, at 88-91, 105-09 & 132-35; *id.*, Ex. 9, at 29-30 (confession).

[10] #20, Ex. 8, at 44 & 91-92.

[11] #20, Ex. 8, at 92 & 132-33.

[12] #20, Ex. 8, at 92, 99 & 102-04.

[13] #20, Ex. 8, at 92 & 100; see also *id.*, at 37 (regarding coin drawer for gaming machines).

Later that day, given the leads from the ATM transaction register and the video recording, the police fairly quickly tracked Marquez down at his apartment only a short distance from the bar. After taking Marquez into custody and performing an initial protective sweep of the apartment, a detective took Marquez to a station for questioning while the remaining detectives remained behind to secure a telephonic search warrant and conduct the search of the apartment and car. During the initial protective sweep, a detective observed a jacket with a Nike emblem matching the jacket worn by the robber earlier.[14]

At the station, Marquez ultimately confessed to the murder and robbery of Adamicki. He stated, *inter alia*, that when he went outside, he retrieved the baseball bat, a screwdriver, and a doubled bag – apparently for the money – from his car. During his statement, he told the detective that the bar money was under a pile of clothes in the laundry room, that Adamicki's wallet was above a panel in the ceiling in the laundry room, and that the baseball bat was in the trunk of his car.[15]

The detectives back at the apartment by then were conducting a search of the apartment and car pursuant to a warrant. Aided in part by Marquez' statements to the interviewing detective, the officers recovered the bar money including the rolled change in the doubled bag underneath clothes in the laundry room, Adamicki's wallet with the bartender's identification from above the panel in the ceiling, the screwdriver, and the baseball bat with what appeared to be blood residue on it from the trunk. Officers also recovered clothing – including the aforementioned Nike jacket – matching the clothing worn by the robber in the surveillance video, as well as the credit cards used by Marquez in the ATM at the bar together with the ATM receipt.[16]

During his confession, Marquez also stated, *inter alia*, that he had planned the robbery variously the day before or earlier that day. He stated that he was having money problems because he owed his brother $3,000, he had "outrageous" credit card debt, Christmas was coming, and he had lost money playing poker. #20, Ex. 9, at 9-13; see also *id.*, at 27-28, 31-39 (related cross) & 43-45 (redirect).

---

[14]#20, Ex. 8, at 93, 109-16, 135-41, 146-47, 154-55 & 157-58; *id.*, Ex. 9, at 2-8 & 23-26.

[15]#20, Ex. 9, at 9-15 & 41.

[16]#20, Ex. 8, at 117-25, 142-45, 147-49 & 155-57.

1    Adamicki lingered for approximately two months, but he ultimately died from injuries and
2 complications associated with multiple blunt force traumas to his skull.[17]
3    At the trial, the prosecutor concluded his opening statement as follows:

> Following the evidence, ladies and gentlemen, it will be quite clear that the defendant premeditated and deliberated the injury that he was going to give to Richard Adamicki, he knew exactly why he was going to do it, *it was to facilitate the robbery*, and it will be clear that he's guilty of first degree murder with use of a deadly weapon, and because he entered the establishment, the Lake Mead Tavern, with the intent to use that baseball bat to commit that crime, you will be – he will also be shown to be guilty of burglary, because of his intent when he entered, burglary with a deadly weapon.

#20, Ex. 7, at 95-96 (emphasis added).

The trial record reflects that the State had provided defense counsel the State's proposed jury instructions at the very latest, and likely before, mid-afternoon on the day prior to the defense case in chief, after the jury had been released for the day.[18]

The State's proposed jury instructions included an instruction on a felony murder theory. Instruction No. 14 stated:

> The unlawful killing of a human being, whether intentional, unintentional or accidental, which is committed in the perpetration or attempted perpetration of Robbery is first degree murder if there was in the mind of the perpetrator the specific intent to commit the crime of Robbery at the time of the unlawful killing.
>
> The specific intent to commit Robbery and the commission or attempt to commit Robbery must be proved by the state beyond a reasonable doubt.

#20, Ex. 13.

Defense counsel had reserved the defense opening until the defense case in chief. In his opening the next day, defense counsel indicated to the jury that state of mind would be the principal issue, as Marquez' state of mind was "an important element of the charges that face him."[19]

////

---

[17]#20, Ex. 8, at 52-78 & 149-53.

[18]#20, Ex. 9, at 47-48.

[19]#20, Ex. 7, at 96; *id.*, Ex. 10, at 2-3.

1    The defense then presented the testimony of a forensic psychologist, Dr. Mark Chambers, Ph.D.
2 Dr. Chambers testified that – based upon his interviews of Marquez and his brother – he concluded that
3 Marquez had a longstanding paranoid schizophrenic psychosis in which he saw an apparition of a
4 female figure from El Salvador who menacingly told him to do things. Marquez told the psychologist
5 that, on the evening in question, the apparition wanted the money from the cash register. As Marquez
6 related to the psychologist, this was "kind of the motivating factor for him taking the money," and he
7 always had the sense that if he did not do what the apparition wanted, she would kill him. Marquez
8 maintained that he had been drinking alcohol and using marijuana and crystal methamphetamine. He
9 stated that he did not remember actually attacking or hitting Adamicki – instead only vaguely of taking
10 the money and putting it in the laundry room. The only actual clinical material that the testimony
11 reflects that Dr. Chambers reviewed was: (a) the report from a prior competency examination conducted
12 in the case, following which petitioner was found competent to stand trial, with which Chambers did
13 not disagree; and (b) records of administration of Stelazine during Marquez' detention, which the
14 psychologist described as a potent antipsychotic medication. Dr. Chambers otherwise relied upon
15 statements by Marquez' brother to support a conclusion that he had a long history of mental illness.[20]

16    After the close of the evidence, the trial court asked defense counsel whether there were any
17 objections to the instructions proposed by the State. Counsel responded that there were not.[21]

18    The prosecutor relied in his closing on, *inter alia*, a felony murder theory.[22]

19    Defense counsel maintained in his closing, *inter alia*: (a) that the State had conceded that
20 Marquez did not intend to kill Adamicki; and (b) that, based on the psychologist's testimony, Marquez
21 did not have the specific intent to commit *the robbery* as a basis for applying the felony murder rule.[23]

22    / / / /

---

[20] #20, Ex. 10, at 4-27.

[21] #20, Ex. 10, at 36.

[22] #20, Ex. 10, at 42-43 & 46.

[23] #20, Ex. 10, at 53 & 55-61. The crux of the argument that counsel built up to – that Marquez did not have the specific intent to commit the robbery necessary for a felony murder – is found at page 59 in the transcript.

-10-

Against the backdrop of the foregoing trial evidence, petitioner cannot establish cause under *Martinez* based upon alleged ineffective assistance of state post-conviction counsel in failing to raise a claim of ineffective assistance of trial counsel for failing to object to lack of notice. Even assuming *arguendo* deficient performance in failing to raise the claim, there is not a reasonable probability that the outcome on post-conviction review would have been different if the claim had been raised.

Even further assuming *arguendo* lack of notice from the information, it is established law that "[w]hen the charging document does not specify the prosecution's theory of a crime, trial and pretrial proceedings may nonetheless provide a defendant with constitutionally adequate notice." *Smith v. Lopez*, 731 F.3d 859, 867 (9th Cir. 2013). The reviewing court "may examine the trial record to determine whether the defendant knew that a particular theory was on the table." *Id.* The Ninth Circuit's *Smith* decision states that "[i]n limited circumstances, the actions of the prosecution may lead the defendant to reasonably believe that a particular theory is off the table . . . ." *Id.*

The factual setting in *Sheppard v. Rees*, 909 F.2d 1234 (9th Cir. 1990), presents a paradigm case of such inadequate notice. In *Sheppard*, the information alleged neither a felony murder theory nor – significantly – an underlying charge of robbery. 909 F.2d at 1236.

The later *Smith* decision summarized the remaining pertinent facts in *Sheppard* as follows:

> . . . . In *Sheppard v. Rees*, the information charged the defendant with one count of murder under California Penal Code § 187, and the prosecution tried the case on the theory that the defendant personally committed premeditated murder. 909 F.2d at 1235. The concept of felony-murder was never mentioned, directly or indirectly, during the pretrial proceedings, opening statements, or trial. *Id.* Nor was there any mention of felony-murder when the judge settled the jury instructions. *Id.* But the morning after the instructions conference, and just before closing arguments, the prosecution requested an instruction on felony-murder, which the trial court gave over a defense objection. *Id.* at 1235–36. On appeal, we agreed with the state's concession that under the circumstances of that case, the felony-murder instruction violated the defendant's fundamental right to notice of the nature of the charges against him because "a pattern of government conduct affirmatively misled the defendant, denying him an effective opportunity to prepare a defense." *Id.* at 1236 (emphasis removed). The principal evil, we explained, was that
>
>> the prosecutor "ambushed" the defense with a new theory of culpability after the evidence was already in, after both sides had rested, and after the jury instructions were settled. This new theory then appeared in the form of unexpected jury instructions permitting the jury to

-11-

> convict on a theory that was neither subject to adversarial testing, nor defined in advance of the proceeding.

*Id.* at 1237.

731 F.3d at 867-68.

Also significantly, *Smith* establishes that the holding in *Sheppard* has only an exceedingly narrow reach:

> *Sheppard* was a "narrow ruling," and we have distinguished it where the facts of a case varied even slightly. For example, in *Morrison [v. Estelle*, 981 F.2d 425 (9th Cir. 1992)], we held that the defendant had adequate notice of the prosecution's felony-murder theory from the evidence presented at trial. 981 F.2d at 428. . . . .

731 F.3d at 868.

Here, there was absolutely no question from the trial evidence that the murder that Marquez committed was committed in the course of a robbery. That was the reason why Marquez hit the victim twice in the head with a baseball bat, so that he could rob the bar and the bartender. Both the murder and the underlying robbery were charged in the information – based on the same basic factual allegations. There never was any question in truth in what was an exceedingly straightforward case that the State was going to present evidence that Marquez committed the murder in the course of the also charged robbery. In the defense case in chief, defense counsel clearly sought to negate, *inter alia*, the specific intent *for the robbery* so that he could negate the robbery as a predicate for a felony murder conviction.

The State clearly did not "ambush" the defense by seeking a felony murder instruction after the instructions had been settled and the evidence concluded. Rather, the defense had the proposed jury instructions – at the very latest and likely prior – prior to mid-afternoon on day prior to the defense case in chief, after the jury had been released for the day. The foregoing defense testimony thus clearly was presented after the defense had received the proposed jury instructions. When the trial court asked defense counsel the next day whether there were any issues with the proposed instructions, counsel responded that there were not. The inference readily apparent from the trial record – when reviewed in full – is that there were no such issues *because it had been apparent all along in what was a straightforward case that the State was trying Marquez also on a felony murder theory.*

-12-

Petitioner therefore cannot demonstrate cause for the failure to timely raise the claim of ineffective assistance of trial counsel in Ground 3(c) under *Martinez* based upon alleged ineffective assistance of post-conviction counsel. Petitioner essentially has combed over a cold record on federal habeas review and presented *post hoc* an alleged inadequate notice issue that was nonexistent when the full trial record instead is viewed from a real time perspective. This case in no sense falls under the narrow ruling in *Sheppard,* and this case is distinguished markedly – and in substance – from *Sheppard*. The trial evidence and record provided ample and timely notice that the State was pursuing a felony murder theory on the – charged – underlying robbery based on the same facts. The defense further took the clearly present felony murder theory into account both in the defense case in chief and the closing argument, such that Marquez neither was ambushed nor prejudiced in his ability to defend the theory.

The claim of ineffective assistance of trial counsel in Ground 3(c) therefore is procedurally defaulted.[24]

It follows with even greater force that the claim of ineffective assistance of appellate counsel in Ground 3(c) also is procedurally defaulted. There was no objection based on lack of adequate notice at the trial level, with good reason as discussed above. With no objection at trial – on what in any event would have been a meritless objection – direct appeal counsel had no viable appellate issue to pursue in this regard. Petitioner thus clearly cannot demonstrate deficient performance or resulting prejudice based upon post-conviction counsel not raising such a meritless claim of ineffective assistance of appellate counsel.[25]

---

[24] The Supreme Court of Nevada similarly finds adequate notice where the felony also was charged and the State did not shift the underlying factual basis supporting both felony murder and the felony. *See State v. Eighth Judicial District Court*, 116 Nev. 374, 997 P.2d 126 (2000)(charging documents alleged that the defendant committed the murder and robbery of the victim, with both the murder and the robbery charged); *Moore v. State*, 116 Nev. 302, 997 P.2d 793 (2000)(the facts stated in the information clearly alleged that the murder occurred during the course of a robbery); *see also Noonan v. State*, 115 Nev. 184, 187-89, 980 P.2d 637, 639-40 (1999)(*inter alia*, the defendant had notice of the underlying factual allegations in the information).

[25] When evaluating claims of ineffective assistance of appellate counsel, the performance and prejudice prongs of the *Strickland* standard partially overlap. *E.g., Bailey v. Newland*, 263 F.3d 1022, 1028-29 (9th Cir. 2001); *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989). Effective appellate advocacy requires weeding out weaker issues with less likelihood of success. The failure to present a weak issue on appeal neither falls below an objective standard of competence nor causes prejudice to the client for the same reason – because the omitted issue has little or no likelihood

(continued...)

The claim of ineffective assistance of appellate counsel thus also is procedurally defaulted.

With the claim of ineffective assistance of appellate counsel in Ground 3(c) itself being procedurally defaulted, petitioner cannot rely upon such alleged ineffective assistance to establish cause to overcome the procedural default of the underlying substantive claim in Ground 2. *See, e.g., Cockett v. Ray*, 333 F.3d 938, 943 (9th Cir. 2003)(defaulted ineffective-assistance claim could not constitute cause); *see also Arrendondo v. Neven*, ___ F.3d ___, 2014 WL 4056516, at *14 (9th Cir., Aug. 18, 2014)(related discussion as to unexhausted ineffective-assistance claims). *Martinez* otherwise does not provide a basis for overcoming the procedural default of *substantive* claims based upon alleged ineffective assistance of post-conviction counsel.

Ground 2 therefore is procedurally defaulted.

With regard to the cumulative error claim in Ground 4, petitioner maintains that "if all grounds in the petition were not defaulted, Ground 4 – which is simply a claim of cumulative error based on all these grounds is not defaulted either."[26] Petitioner's argument is unpersuasive for two reasons. First, Grounds 2 and 3(c) in fact are procedurally defaulted. Second, a petitioner neither can exhaust a cumulative error claim nor overcome a procedural default of such a claim derivatively based upon the exhaustion or lack of default of other claims. A cumulative error claim is a separate claim that must be separately exhausted. When petitioner sought to do so here, the Supreme Court of Nevada held that all claims in the second state petition were procedurally barred. Petitioner therefore must overcome the procedural default of the claim of cumulative error separately for the cumulative error ground in and of itself. *Martinez*, again, does not provide a basis for overcoming the procedural default of claims based upon alleged ineffective assistance of post-conviction counsel other than claims of ineffective assistance of trial and appellate counsel.

Ground 4 therefore is procedurally defaulted.

////

---

[25](...continued)
of success on appeal. *Id.* A weak to nonexistent notice issue as to which no objection was raised at trial presents the epitome of a claim with little or no likelihood of success on appeal.

[26]#41, at 14-15.

IT THEREFORE IS ORDERED that petitioner's motion (#39) to dismiss is GRANTED, such that Grounds 2, 3(c), and 4 are DISMISSED with prejudice as procedurally defaulted.

IT FURTHER IS ORDERED that respondents shall file an answer to the remaining grounds in the first amended petition on the merits within **sixty (60) days** of entry of this order.

IT FURTHER IS ORDERED that petitioner may file a reply to the answer within **thirty (30) days** of service.

IT FURTHER IS ORDERED that any additional hard copies of exhibits submitted by counsel subsequent to this order shall be forwarded – for this case – to the **Clerk's Office in Reno**.  Counsel need not re-send any exhibit copies sent previously to Las Vegas rather than Reno.

DATED this 22nd day of September, 2014.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE